UNITED STATES of America,
Plaintiff-Appellee,

v.

Carlos FERNANDEZ–ROQUE,
Defendant-Appellant.

No. 82–3578.

United States Court of Appeals,
Fifth Circuit.

April 13, 1983.

Knobloch & Knobloch, F. Smith Knobloch, Thibodaux, La., for defendant-appellant.

John P. Volz, U.S. Atty., Harry W. McSherry, Howat A. Peters, Jr., Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before RUBIN and TATE, Circuit Judges, and DAVIS *, District Judge.

TATE, Circuit Judge:

The defendant, Carlos Fernandez-Roque ("Roque"), appeals his conviction by a jury as a principal and a conspirator in the obstruction of criminal investigations, 18 U.S.C. §§ 2, 371, 1510, and for interstate travel in aid of racketeering activities, 18 U.S.C. § 1952. Roque was found to have participated in the shooting of Phillip Maronge, who became a government informant after his arrest for marijuana dealing. On appeal, Roque contends that the trial court erred by (1) admitting a fellow conspirator's testimony of hearsay statements of coconspirators when the government had not presented independent evidence of the existence of a conspiracy and the defendant's participation in it; (2) rejecting the defendant's attempts to impeach the government's witness through introducing into evidence the testimony of one of the coconspirators in an earlier trial of the same case, as averred to by another witness at that prior trial; (3) refusing to introduce into evidence the acquittals in the prior trial of those coconspirators; (4) finding that the government-arranged identifications of Roque were not impermissibly suggestive or prejudicial; and (5) finding that the evidence was insufficient to support the conviction. Finding no reversible merit to these contentions, we affirm.

1. *Introduction of Hearsay Statements of Coconspirators*

Roque contends that the district court erred in permitting Bruce, a conspirator

* District Judge of the Western District of Louisiana, sitting by designation.

who had pleaded guilty to the conspiracy to kill Maronge (the government informant), to testify as to hearsay statements made by Roque's alleged coconspirators. The statements were admitted under a hearsay exception, Fed.R.Evid. 801(d)(2)(E), which provides that statements "made by a coconspirator of a party during the course and in furtherance of the conspiracy" are admissible.

In *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), we set out the guidelines for the admissibility of a coconspirator's statements against a defendant on trial. We noted the requisite predicate facts to be that "there must be a conspiracy, the statement must be made during the course of and in furtherance of the conspiracy, and the declarant and the defendant must be members of the conspiracy." 590 F.2d at 578. Further, "the judge alone [must] make the determination of the admissibility of the evidence." *Id.* at 579–80. "[A]s a preliminary matter, there must be *substantial, independent* evidence of a conspiracy ... established by evidence independent of the coconspirator statement itself." *Id.* at 581 (emphasis in original). "[T]he trial court's threshold determination of admissibility is normally to be made during the presentation of the government's case and before the [coconspirator's statement] evidence is heard by the jury." *Id.*

■ At this stage, a declaration by a coconspirator against a defendant is admissible only when there is a " 'sufficient showing, by independent evidence, of a conspiracy among one or more ... defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy' ", *id.,* at least by independent evidence sufficient "to take the question to the jury." *Id.* Further, at the end of the trial

> [r]egardless of whether the proof has been made in the preferred order, or the coconspirator's statement has been admitted subject to later connection, on appropriate motion at the conclusion of all the evidence the court must determine as a factual matter whether the prosecution

has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy.

590 F.2d at 582.

Here, the district court required the government to establish the *James* predicate before admitting in evidence any declarations made by a coconspirator. Through the testimony of Bruce (the coconspirator who had pleaded guilty and testified for the government), the prosecution established: the background surrounding Maronge (the victim's) arrest along with some of the coconspirators; Bruce's subsequent travel with another coconspirator to Miami at the request of yet another conspirator to meet with coconspirators and their return to Louisiana (where Maronge's subsequent shooting took place); Bruce's subsequent receipt of a telephone call from the defendant Roque to have him picked up and brought to · meet with Bruce and another conspirator, following which Roque and the man who subsequently shot Maronge were brought to a meeting between the four; at a meeting of the four, Roque himself talked about how they were going to "get to" Maronge— following which, Maronge was indeed shot by the gunman the defendant Roque had brought to meet with Bruce.

■ Despite Roque's contention to the contrary, the predicate facts so established by evidence independent of coconspirators' out-of-court declarations were clearly sufficient to show a conspiracy, of which the defendant Roque was a member, to shoot Maronge, the government witness. *See, e.g., United States v. Miller,* 664 F.2d 94, 98 (5th Cir.1981). The out-of-court declarations were therefore admissible. Further, we find no error in the district court's holding at the conclusion of the trial that, without reference to the out-of-court declarations, the predicate facts of the conspiracy

had been established by a preponderance of the evidence.[1]

Roque protests that the only evidence linking him to the conspiracy was Bruce's identification, and that the identification made at the time of Roque's arrest was flawed because it was based on prejudicial procedures. As we discuss in section 4 below, however, Bruce became personally acquainted with Roque on the several occasions they met to plan the shooting; moreover, other evidence adduced at trial (such as Roque's registration at the hotel where the coconspirators met and records of his telephone calls to and from the other coconspirators) connected him with the conspiracy.[2]

### 2. Introduction of a Coconspirator's Testimony from a Prior Trial

Roque sought to impeach Bruce's testimony regarding the conspiracy to kill Maronge by introducing testimony of a coconspirator, Resende, from a trial in this same case in which Resende, Goodrich, and Bonvillain were acquitted. Resende was the only defendant who had testified in that trial. Urging that Resende, as well as Goodrich and Bonvillain, would take the Fifth Amendment if called to testify in Roque's subsequent trial, Roque attempted to examine a government agent to ask if he had been present at the prior trial where Resende had taken the stand and denied similar allegations made by Bruce. The trial court ruled that this was an improper attempt to introduce the trial testimony of a witness who was not called to testify in the present case and that the agent's testimony regarding Resende's statements did not constitute an exception to the hearsay rule contained in Fed.R.Evid. 804(b)(1).

■ Roque's defense counsel did not satisfy the requirements of Rule 804(b)(1), which provides that if the declarant is "unavailable" as a witness, there is an exception to the hearsay rule for "[t]estimony given as a witness at another hearing of the same or a different proceeding" of the party against whom the testimony is now offered—in this case, the government.[3] For purposes of the rule, "unavailability" encompasses, inter alia, a situation, which the defendant urges is implicated here, where the witness is "exempted by ruling of the court on the ground of privilege" or "persists in refusing to testify ... despite an order of the court to do so." Fed.R.Evid. 804(a). Roque, the proponent of the hearsay evidence, has the burden of proving the unavailability of the witness from the prior trial. See United States v. Amaya, 533 F.2d 188, 191 (5th Cir.1976), cert. denied, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977).

---

1. Without reference to hearsay statements, the testimony adduced at trial established that Bruce met with three of the coconspirators, Resende, Goodrich and Bonvillain, to plan the shooting; that Roque met with Bruce, Bonvillain, and the unknown male ("John Doe") who did the actual shooting; that Bruce accompanied "John Doe" and saw him shoot Maronge; and that Bruce, "John Doe", Bonvillain and Roque travelled together after the shooting. This evidence was substantially unrebutted by the defendant.

2. Roque also contends that several statements presented at trial were inadmissible because they were not made by a coconspirator during the course and in furtherance of the conspiracy, as required by Rule 801(d)(2)(E). The defendant objects to introduction of telephone toll records, including a call to a "Sidney" rather than to the conspirator "Ernest" Bonvillain; however, the fact that these calls *occurred* is not a hearsay statement. Similarly, the evidence of pre- and post-conspiracy "acts of mis-

conduct and bad character" of the coconspirators with respect to the drug arrests of the coconspirators, are merely observations of the witnesses of events precipitating or in furtherance of the conspiracy and do not involve hearsay statements.

3. Rule 804(b) provides in full:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

■ Roque did not make a record of his efforts to produce Resende as a witness—he did not subpoena him or ask the judge for a ruling as to the unavailability on account of privilege or for an order to testify. There was thus no opportunity for the trial court to evaluate Resende's alleged refusal to testify and propensity to invoke the fifth amendment, or to ascertain whether some type of immunity was available to Resende from the effects of his possible incrimination by his testimony.[4] *Cf. United States v. Pelton,* 578 F.2d 701, 709–10 (8th Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978) (Rule 804(a) "unavailability" does not exist where counsel made no effort to produce witness or to prove his refusal to testify or intent to exercise fifth amendment privilege). Since Roque's counsel did not bring the issue of Resende's unavailability into the ambit of the "discretion of the trial court to accept or reject counsel's representations" concerning Resende's privilege or refusal to testify, *see Bailey v. Southern Pacific Railroad,* 613 F.2d 1385, 1390 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980), we cannot on appeal speculate as to the factual merits of those representations.[5]

### 3. *Evidence of Acquittal of Coconspirators*

Roque attempted to introduce evidence of the acquittals in a prior trial of coconspirators Resende, Goodrich, and Bonvillain in order to impeach Bruce's testimony implicating those alleged coconspirators and the defendant in the shooting. He also argues in opposition to the trial court's ruling that this evidence was irrelevant, that Fed.R. Evid. 806 allows introduction of evidence

attacking or supporting the credibility of the declarant whose hearsay statements have been previously admitted into evidence under an exception to the hearsay rule.

■ Rule 806 is not pertinent to Roque's objection because the character or credibility of the coconspirators/declarants Resende, Goodrich and Bonvillain is not at issue in this case. In actuality, Roque challenges coconspirator *Bruce's* credibility and his account of the activities of the conspiracy by seeking to introduce the jury's finding in a prior case that the government had not proved beyond a reasonable doubt the guilt of certain of the coconspirators. The circumstance of the acquittal of three of the coconspirators does not detract from Bruce's credibility or foreclose the conviction of another coconspirator's in a subsequent case. The district court did not abuse its discretion in ruling that this evidence was irrelevant and inadmissible. Fed.R. Evid. 401.

### 4. *Witness Identification of the Defendant*

Roque contends that two witnesses' pretrial and in-court identifications are inadmissible because the presentation of him alone to the witnesses used by the government to obtain them were impermissibly suggestive and created a substantial risk of misidentification. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *United States v. Bazan,* 637 F.2d 363, 367 (5th Cir.1981). In particular, Roque objects that Bruce's initial identification of him to government agents occurred in a single suspect show-up;[6] and that an-

---

**4.** Of course, Resende would be constitutionally protected from future prosecution, with respect to this case in which he was acquitted, by the double jeopardy clause.

**5.** Moreover, Roque did not proffer the "best evidence" of Resende's testimony—the official court transcript. *See* Fed.R.Evid. 1005. He instead sought to elicit the observations of another witness at the earlier trial, Agent Hilton, concerning the content of Resende's testimony. The district court may have (correctly) rested its ruling on that ground—"that's the reason I did not allow you to call that agent to testify as

to what some other witness had said." (Tr. 589.)

**6.** According to trial testimony, Bruce identified Roque (thus bringing about Roque's arrest) after Bruce was in the custody of and cooperating with the federal authorities. Bruce testified that in trying to locate Roque he could supply the government agent only with the name "Carlito" and a telephone number of a barber shop. The agent took Bruce to that barber shop and asked if "Carlito" were there; Roque responded and Bruce identified him.

other witness, Van Benchoten, had seen the defendant only on one occasion, sixteen months prior to his testimony, at the hotel for which Van Benchoten worked, and was not asked to identify Roque until Van Benchoten testified in court.

In *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Supreme Court takes a two-step approach to the exclusion of identifications. First, the court determines if the procedure was unnecessarily suggestive—in this case, Bruce's single-suspect viewing of the defendant after his arrest and Van Benchoten's in-court confrontation. If it is found suggestive, a separate inquiry is conducted as to whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification and thus a denial of due process. *See also Passman v. Blackburn,* 652 F.2d 559, 569–70 (5th Cir. 1981). In making this inquiry, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

A reliable identification may thus be admitted even if the confrontation procedure was suggestive. The factors considered in determining reliability include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated [by the witness] at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson, supra,* 432 U.S. at 114, 97 S.Ct. at 2253.

Bruce's identification stemmed from his many face-to-face contacts and personal acquaintance with the defendant during the course of the conspiracy, and not merely from the circumstances of the arrest. There is no question of reliability of Bruce's *identification* of Roque; any doubts hinge on Bruce's *credibility* in implicating the defendant in the conspiracy, doubts which were left to jury resolution.

Under the totality of the circumstances, Van Benchoten's in-court identification also does not result in irreparable misidentification. Although he saw the defendant on only one occasion many months before the trial in the course of his employment at a hotel, he testified to having a disagreement with Roque concerning hotel policy that could have affected greatly the degree of attention with which he regarded Roque during that short period. Another witness present at that time (who could not positively identify Roque), gave a general description of the defendant. If this testamentary identification was weak, "it was a matter to be emphasized to the jury and not to the court." *Bazan, supra,* 637 F.2d at 366.

### 5. Sufficiency of the Evidence

Roque contends that the evidence to convict him as coconspirator and principal in the obstruction of a criminal investigation and for use of interstate transportation in aid of racketeering activities is insufficient. He argues that the government proved no connection between him and the drug dealings which led to the plan to kill the dealer-turned-informant Maronge, or that he knew of Maronge's cooperation with federal authorities. Additionally, he urges that he did not participate in the initial meeting of Bruce, Resende, Goodrich and Bonvillain and that the sole role he supposedly played (as testified to by Bruce) was appearing with the "John Doe" assailant at another meeting.

We find, after reviewing the evidence in the light most favorable to the prosecution, that the jury could have found beyond a reasonable doubt the essential elements of the crimes for which Roque was tried. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In a conspiracy prosecution, the government does not have to prove that the

defendant was intimately familiar with each and every detail of the conspiracy but that the defendant had knowledge of the agreement and was associated with the plan. Evidence that the defendant had knowledge of the conspiratorial agreement and associated with the plan in order to promote its success is sufficient to sustain a conspiracy conviction where the conspiracy has been adequately established by other independent evidence. *United States v. Cuesta,* 597 F.2d 903, 918 (5th Cir.) *cert. denied sub nom. Bowles v. United States,* 444 U.S. 964, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979).

The defendant was charged not only with the conspiracy but with the actual substantive offenses of obstruction of justice and interstate travel in aid of racketeering. The government was able to show that the defendant brought "John Doe" from Florida to Louisiana in order to bring about the attempted murder of Maronge, met with and made and received telephone calls to and from the other coconspirators, and travelled interstate with them after the shooting. Since the government proved that the appellant was involved in the plan to murder Maronge, whether or not Roque knew of all the details regarding the motive for the shooting is irrelevant. *United States v. Elam,* 678 F.2d 1234, 1247 (5th Cir.1982). When viewed in the light most favorable to the government, the government proved beyond a reasonable doubt that the defendant was guilty on all three counts.

*Conclusion*

Because we find no reversible merit to the defendant's objections to the sufficiency of the evidence and to the trial court's rulings as to the admittance of hearsay statements, evidence of acquittals in a prior trial and identifications, we AFFIRM his conviction.

AFFIRMED.